Dimitrios **LIOSSATOS**

v.

**CLIO SHIPPING CO.**

Civ. No. 71–1001–B.

United States District Court, D. Maryland.

Nov. 22, 1972.

a seaworthy ship, and (3) for failure to provide maintenance and cure. Defendant has appeared and filed a motion to decline jurisdiction on the basis that plaintiff and defendant's contacts with the United States were so minimal that jurisdiction should not be retained. Plaintiff argues that the contacts with the United States were substantial enough to justify the court's exercise of jurisdiction and application of United States · law. With leave of the court, plaintiff filed and defendant answered interrogatories addressed to the contacts Clio Shipping Co. has with the United States. It is to this motion to decline jurisdiction that the court presently addresses itself.

■ In suits between foreign nationals based on maritime torts, federal courts have jurisdiction to determine rights of the parties. Lauritzen v. Larsen, 345 U.S. 571, 575, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Gkiafis v. Steamship Yiosonas, 387 F.2d 460, 462 (4th Cir. 1967). While federal courts have jurisdiction, the exercise of their jurisdiction over foreign nationals is not mandatory, but rather is discretionary and may be declined. Bekris v. Greek M/V Aristoteles, 437 F.2d 219, 220 (4th Cir. 1971); Camarias v. M/V Lady Era, 432 F.2d 1234 (4th Cir. 1970), adopting lower court opinion in Camarias v. M/V Lady Era, 318 F.Supp. 379 (E.D.Va. 1969); Gkiafis v. Steamship Yiosonas, 387 F.2d 460, 462 (4th Cir. 1967); Mpampouros v. Steamship Auromar, 203 F.Supp. 944, 949 (D.Md.1962). Even in those instances when jurisdiction is retained, it may become necessary to apply foreign law rather than United States law. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 254 (1953); cf. Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L. Ed.2d 252 (1970). In determining whether jurisdiction should be retained or whether United States or foreign law is to be applied, it is essential to examine the nature and extent of the contacts with the United States.

Murray I. Resnick and Solomon Kaplan, Baltimore, Md., for plaintiff.

John F. King and Robert H. Bouse, Jr., Baltimore, Md., for defendant.

BLAIR, District Judge.

## MEMORANDUM OPINION AND ORDER

Dimitrios Liossatos, a Greek seaman, filed this action against Clio Shipping Co., a Greek corporation, for the impairment of his vision which occurred while Liossatos was serving aboard the S.S. CLIO, a vessel owned by Clio Shipping Co. Relying on United States law, plaintiff sues defendant in three counts for (1) negligence under the Jones Act, 46 U.S.C. § 688, (2) for failing to provide

From the record before the court,[1] it appears that the relationship to the United States of the parties and matter in suit is very insubstantial. Plaintiff is a Greek citizen residing in his native land. He apparently signed aboard the S.S. CLIO somewhere in Europe.[2] The employment agreement executed by plaintiff was in Greek and specifically provides, in translation, that wages are to be paid on Greek scale and the working terms are to be in accordance with the "Greek Collective Employment Agreement." The wrongs of which plaintiff complains happened outside the United States since the entire voyage of the S.S. CLIO was in foreign waters and ports of call. Never once during the voyage did the S.S. CLIO enter American territorial waters or have any contact with American ports. All of the medical treatment plaintiff received was performed outside of the United States and plaintiff's eye was removed by a physician in Greece.

The defendant in the action is a Greek corporation, owning no property in or allegiance to the United States. Ninety-eight per cent of its shareholders are Greek citizens living in Greece. One 2% shareholder is an American citizen of evident Greek descent now residing in Greece. The corporation has never transacted business in the United States or earned income attributable to United States trade. Nor has the corporation ever paid any federal taxes or Social Security contributions for its employees. Its only contact with the United States, beside the 2% shareholder, was that its officers and directors had United States addresses from the date of its incorporation to 1969, although since May 1969 to the present all of its directors list

addresses in Greece. Despite the addresses of its officers and directors there is no indication Clio Shipping had or maintained a business office or base of operation in this country. The only offices it apparently has are in Greece and Liberia. At the time plaintiff was injured, the S.S. CLIO was being operated by Ionian Sea Operators, Inc., a New York based corporation. There is nothing before the court, however, to connect Ionian to Clio Shipping other than the fact that Ionian operated Clio Shipping's vessel at the time of the injury. The vessel is now being operated by Phoenix Shipping Co., Ltd., an English corporation.

The S.S. CLIO itself apparently has never been in United States waters or ports from the date of its construction in 1951 to present. The ship was built in Scotland. It has never carried United States cargo, personnel, goods, or other materials. It flies the Liberian flag and with the exception of one Argentinean was manned by an all Greek crew at the time of plaintiff's injury.

■ The considerations which go into determining choice of law in maritime tort cases were set forth by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Five factors were given special emphasis:[3] 1) Place of the wrongful act; 2) Law of the flag; 3) Allegiance or domicile of the injured; 4) Allegiance of the defendant shipowner; and 5) Place of the contract. While these factors may not be all inclusive in choice of law determinations, Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), they do indicate that Greek and not United States law must be applied. *See also* Mpam-

---

1. In deciding this motion, the court has before it only allegations made in the parties' pleadings and the answers to the interrogatories and the exhibits attached thereto.

2. Defendant states that plaintiff signed on in Venice in the motion to decline jurisdiction. Plaintiff denied in his response

that he signed on in Venice, but did not state where he did sign on.

3. Two additional factors, the inaccessibility of the foreign forum and the law of the forum, were discussed by the Supreme Court because they were raised by counsel. The Supreme Court indicated, however, that these factors were more relevant to jurisdiction than choice of law.

pouros v. Steamship Auromar, 203 F. Supp. 944, 949 (D.Md.1962). The situation in both *Lauritzen* and the present case differ greatly from that of Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), where the Supreme Court held United States law was applicable. In that case, the injuries were sustained in American waters; the defendant shipowner, while a Greek corporation, had its largest office in New York and another office in New Orleans; the owner of 95% of defendant's stock was a Greek citizen with a United States domicile; and the defendant corporation did substantial business in the United States and derived much of its income from hauling cargo to and from United States ports.

 Having previously decided that this court has jurisdiction, it must now be resolved whether this jurisdiction will be exercised or declined. The factors which go into choice of law, while influential, are not conclusive on the question of the discretionary exercise of jurisdiction. Gkiafis v. Steamship Yiosonas, 387 F.2d 460, 462 (4th Cir. 1967). As pointed out by the court in *Gkiafis*, of far more significance are factors relating to the power of the court to entertain the litigation. Also important is the question of whether the plaintiff will be denied a remedy if jurisdiction is declined. From either position, it appears there is very little in favor of retention of jurisdiction. If this action were entertained here, this court would have little power over the litigation. The entire locus of the action is foreign. From what appears in the record, all of the relevant witnesses, including plaintiff's fellow seamen and treating physicians,

are foreign nationals not subject to this court's subpoena power. Since defendant owns no assets in this country, a judgment by this court may well be meaningless. An American court cannot order execution of its judgments on property in foreign lands. A Greek court asked to honor a judgment by this court against defendant by executing its own process upon property in Greece might very well conclude this court had no jurisdiction and refuse to honor the judgment. Furthermore, considerations of convenience militate against an action in this forum. All parties and witnesses would have to travel a great distance to attend the trial. There would be language barriers that would require constant translation, both as to conversations and court exhibits and evidence, such as plaintiff's employment agreement. The court itself would be handicapped by having to apply unfamiliar Greek law, and experts would be required to prove to the court the applicable Greek law. All of these inconveniences would not be present were the action maintained in Greek courts. There is nothing, moreover, to indicate that plaintiff would be without remedy in a Greek court. Defendant has stated what plaintiff's remedy is [4] and has agreed not to raise a statute of limitation defense if any action is brought in Greece. Plaintiff, on the other hand, while speculating there may not be a Greek remedy, has done nothing to demonstrate his inability to proceed in Greece. Since the United States has no genuine interest in this action, there being no real connection of the parties or events to the United States and little danger of plaintiff being a public charge

---

4. Defendant stated in its answers to plaintiff's interrogatories what plaintiff's Greek remedy is. In Answer 21, defendant stated:

21. (a) Under Greek law 551 the seaman is entitled to compensation by the Owners varying according to the percentage of incapacity likely to have been sustained after the injury. The basis of the assessment shall be his monthly earnings at the time of the accident.

(b) Beyond the above, Liossatos shall be entitled to pension in consequence of the accident as shall be allowed by the Seaman's Provident Fund (NAT), which covers all Greek seamen in respect of pension. The pension allowance depends on the man's total period of service at sea and the wages he was earning at the time of the accident.

in this country if a remedy is not provided in this court, there is no reason for a federal district court to entertain this action.

The decisions of the Fourth Circuit demonstrate that jurisdiction should be declined under circumstances similar to those presently before the court. In Bekris v. Greek M/V Aristoteles, 437 F.2d 219 (4th Cir. 1971), the court upheld the district court's declining jurisdiction. In *Bekris,* plaintiff was a Greek seaman injured in foreign waters aboard a ship of Greek registry and flag. Defendant, a Panamanian corporation, operated from Greece and was owned entirely by British citizens living in Greece. The court pointed out that plaintiff should have little difficuly pursuing an action in his native land, and felt jurisdiction was appropriately declined because plaintiff's "claims bear no relationship to the United States other than the fact that the case was brought here and personal jurisdiction was obtained here." Similarly, in Camarias v. M/V Lady Era, 432 F.2d 1234 (4th Cir. 1970), the Fourth Circuit upheld and adopted the opinion of the lower court in Camarias v. M/V Lady Era, 318 F.Supp. 379 (E.D.Va.1969), which declined jurisdiction because plaintiff's only contact to this country was an American wife. The decisions of the court in this district are in accord and stand as precedent for dismissal. *See* Mpampouros v. Steamship Auromar, 203 F.Supp. 944 (D.Md.1962); Giatilis v. THE DARNIE, 171 F.Supp. 751 (D.Md. 1959).

While plaintiff argues that jurisdiction should be retained because defendant's contacts with this country are substantial, the facts of this case demonstrate that the defendant's contacts are anything but substantial. Therefore, it is the conclusion of this court that jurisdiction should be declined. The declining of jurisdiction is based upon the condition that defendant not raise the statute of limitation as a defense should

an action be commenced in the Greek courts.

It is ordered that the case be dismissed.